# IN THE COURT OF APPEALS OF IOWA

---

No. 26-0590
Filed May 27, 2026

---

**In the Interest of J.C., Minor Child,**

**A.G., Mother,**
Appellant.

---

Appeal from the Iowa District Court for Wapello County,
The Honorable Richelle Mahaffey, Judge.

---

**AFFIRMED**

---

Patricia J. Lipski, Washington, attorney for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, attorneys for appellee State.

Sarah L. Wenke, Ottumwa, attorney and guardian ad litem for minor child.

---

Considered without oral argument
by Tabor, C.J., and Chicchelly and Sandy, JJ.
Opinion by Sandy, J.

**SANDY, Judge.**

A mother[1] appeals the termination of her parental rights to J.C., born in 2023. On appeal, the mother argues that termination is not in J.C.'s best interests and that a permissive exception should be applied. Upon our review, we affirm the termination of the mother's parental rights.

## BACKGROUND FACTS AND PROCEEDINGS

J.C. was born in July 2023. At birth, his meconium tested positive for marijuana/THC, and the Iowa Department of Health and Human Services (HHS) opened a file on the family. Concerns at the time included parental substance use, domestic violence between the parents, and the parents' capacity to provide full-time care for an infant. The parents agreed to a safety plan placing J.C. with his paternal grandparents, V.C. and R.C.

The State filed a child-in-need-of-assistance petition on March 13, 2024. Following a contested hearing on April 5, 2024, the juvenile court adjudicated J.C. a child in need of assistance. J.C. was formally removed from his parents' care pursuant to the adjudication order and has remained in the physical care of his paternal grandparents since that time. A dispositional hearing followed in May. HHS provided the family with services, including family-centered services and visitation.

A permanency hearing was held in October 2024. At that hearing, HHS recommended termination of both parents' parental rights—a termination petition had already been filed. The matter was set for a combined termination and permanency hearing on March 4, 2025. At the

---

[1] The father's parental rights were also terminated, but he did not appeal.

hearing, the parties agreed that the mother had made enough progress to warrant an extension, and the termination proceedings were continued.

But on May 27, the State moved for a scheduling conference and requested a combined permanency review and termination hearing. That hearing was held in July. The father consented to termination of his parental rights. The mother contested termination. In a July 31 order, the juvenile court terminated the father's parental rights but declined to terminate the mother's parental rights, instead placing J.C. in a legal guardianship with V.C. and R.C. The court concluded that permanency could be achieved through guardianship.

On October 3, the juvenile court entered an order transferring the guardianship to probate court. The CINA case, however, was not closed.

The events between the July 31, 2025, order and the second termination hearing in February 2026 are characterized differently by the parties, though the central facts are not in dispute. Shortly after the July 2025 hearing, the mother relocated to Illinois to live with her mother. She testified at the February 2026 hearing—and stated in correspondence attached to her post-trial motion—that the move was prompted by her mother's serious health issues and was intended to be temporary, pending approval of a voucher under the Housing Choice Voucher Program (Section 8) which would allow her to return to the Ottumwa area. In September 2025 and again in October, she applied for state benefits in Illinois and indicated on those applications that J.C. was in her physical care, although J.C. always remained with his paternal grandparents. The benefits issue was ultimately resolved with the help of the social work case manager.

Following the October order transferring the guardianship to probate court, the mother believed the juvenile guardianship had been finalized and the CINA case closed. She did not maintain regular contact with the assigned HHS worker until shortly before the February 2026 termination hearing. In November 2025, the court ordered a paper file review, and a second termination petition was filed that same month.

The mother's contact with J.C. during this period was the subject of conflicting evidence. The HHS February 2026 update and the testimony of J.C.'s grandmother described the mother's contact as inconsistent, ebbing and flowing, with no in-person visits between August 2025 and January 2026, despite planned visits around Thanksgiving and Christmas. The mother testified that she maintained regular phone and video contact and that she returned to visit J.C. in person when circumstances allowed.

The combined permanency review and termination hearing was held on February 17, 2026. The mother testified that she had obtained a Section 8 voucher and was searching for housing within roughly thirty minutes of J.C.'s residence, had maintained sobriety from marijuana and other illegal substances for a lengthy period, had completed outpatient substance-use treatment, was engaged in mental-health counseling, and intended to pursue training to become a licensed ultrasound technician. She testified that she did not seek to disrupt J.C.'s placement with his grandparents, who she acknowledged were providing him with excellent care, but sought to preserve her relationship with him and to finalize the previously ordered guardianship. The State and the guardian ad litem questioned the mother's intentions and recommended termination as the more favorable option for permanency. The paternal grandmother testified that she and her husband wished to adopt J.C.,

4

believed termination and adoption to be in his best interests, and would continue to support the relationship between J.C. and his mother.

By order entered February 26, 2026, the juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(e) and (h) (2025), found termination to be in J.C.'s best interests under section 232.116(2), and concluded that no permissive exception under section 232.116(3) precluded termination. The court directed that guardianship and custody remain with HHS pending adoption.

The mother moved to reconsider. The motion challenged the court's findings concerning her progress, her contact with J.C., the best-interests determination, and the court's treatment of the section 232.116(3) exceptions. It also attached a written statement from the mother. The juvenile court denied the motion, concluding that it raised no new legal issues, identified no new material facts, and pointed to no specific errors in the record. The mother now appeals.

## STANDARD OF REVIEW

"We review termination of parental rights proceedings de novo." *In re J.H.*, 952 N.W.2d 157, 166 (Iowa 2020). "While we are not bound by the juvenile court's factual findings, we accord them weight, especially in assessing witness credibility." *Id.*

## DISCUSSION

We use a three-step process to determine whether (1) a statutory ground has been established, (2) termination is in the child's best interests, and (3) any permissive exceptions to termination should be applied. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). If a parent does not challenge a step, we need not address it. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). The mother

does not contest the statutory grounds for termination. Instead, she argues that termination is not in J.C.'s best interests under Iowa Code section 232.116(2), and that a permissive exception to termination under section 232.116(3)(c) should be applied due to the closeness of the parent-child bond.

## I. Best Interests

We apply the best-interests framework under Iowa Code section 232.116(2), giving "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." We consider the child's long-term and immediate interests. *J.H.*, 952 N.W.2d at 171. We must look at what the future may hold for the child if they are to be returned to the parent's care. *Id*. We do this by reviewing a parent's past performance, as it is a helpful predictor of the quality of care the parent can provide in the future. *See id*.

After reviewing the record, we find that termination of the mother's parental rights is in the child's best interests. J.C. has lived with his paternal grandparents since July 2023—nearly his entire life. They wish to adopt him. They have provided him with stability through every chapter of this case, including those in which his mother could not. The juvenile court found, and the record confirms, that J.C. is loved and well cared for in their home.

The mother argues that the bond she shares with her son makes termination contrary to his best interests. We do not doubt the bond. But best interests under section 232.116(2) is not a contest of affection. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (observing that, although the mother loved the child, the child also had a close relationship with the grandparents with whom she had been placed for most her life). It is an inquiry into where this

child's long-term safety, stability, and growth are best secured. Past performance is probative of future performance. After the juvenile court declined to terminate her rights in July 2025 and placed J.C. in a guardianship with his grandparents, the mother relocated to Illinois. She did not see J.C. in person between August 2025 and January 2026, despite planned visits at Thanksgiving and Christmas. Her phone and video contact was inconsistent.

The mother testified that she had recently obtained a Section 8 voucher, intended to return to the Ottumwa area, and had maintained sobriety. We credit those efforts. But J.C. is two-and-a-half years old. He cannot wait on the prospect of housing yet to be found, employment yet to be obtained, and proximity yet to be reestablished. Our supreme court has been plain: a court "cannot deprive a child of permanency after the State has proved a ground for termination . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 112 (citations omitted). Hope is not a permanency plan.

The mother urges that guardianship—the disposition that the juvenile court ordered in July 2025—should be reinstated. But "a guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (citation omitted). What the mother did with the guardianship after July 2025 is itself the answer to whether guardianship can serve the goal of permanency here. Demands that J.C. be moved to Illinois, benefit applications misstating his custody, months without an in-person visit—these are not the ordinary stresses of a guardianship. They are the reason the juvenile court concluded, on this record, that guardianship would

7

not deliver the stability J.C. requires. We agree.[2] Termination is in J.C.'s best interests.

## II. Permissive Exception

The State contests error preservation, noting that A.G. did not invoke section 232.116(3)(c) at the termination hearing and raised it only generally in her Rule 1.904(2) motion. Even assuming error is preserved, the mother's argument fails on the merits.

Section 232.116(3)(c) permits—but does not require—a court to decline termination upon clear and convincing evidence "that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." The burden rests on the parent. *See A.S.*, 906 N.W.2d at 475–76. A bond, without more, will not do. *See In re A.B.*, 956 N.W.2d 162, 169–70 (Iowa 2021). The question is "whether the child will be disadvantaged by termination, and whether the disadvantage overcomes" the parent's inability to meet the child's developing needs. *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010).

The mother relies heavily on the juvenile court's July 2025 order, suggesting that order found a subsection (3)(c) exception applied. It did not. The July 2025 order denied termination because permanency could be achieved through guardianship and expressly declined to reach section 232.116(3).

On the record before us, the mother has not carried her burden. The bond she describes is undermined, not supported, by the period between

---

[2] The grandmother's testimony bears noting. She supports termination and adoption. She also intends to maintain the relationship between J.C. and his mother. Termination ends a legal relationship; it does not necessarily end a familial relationship.

August 2025 and January 2026—five months without an in-person visit, inconsistent phone and video contact, and her missed planned visits during the holidays. Whatever closeness existed at the time of the July 2025 order, the months that followed strained rather than strengthened it. Section 232.116(3)(c) requires evidence that termination will be detrimental at the time of termination. The record does not bear that finding here. Accordingly, we affirm.

**AFFIRMED.**